# UNITED STATES DISTRICT COURT
for the
District of Minnesota

UNITED STATES OF AMERICA

v.

IRINA VOROTINOV, and
ALKON VOROTINOV

Case No. 15-MJ-021 (HB)

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

(I) On or about March 23, 2012, in Hennepin County, in the State and District of Minnesota, defendant Irina Vorotinov, having devised a scheme and artifice to defraud Mutual of Omaha Insurance company out of over $2 million, executed the scheme by causing Mutual of Omaha to send her a check in the United States mail in the amount of $2,048,414.09, in violation of Title 18, United States Code, Section 1341 (Mail Fraud); and

(II) From in or about at least as early as April 2013 through and including the date of this complaint, in the State and District of Minnesota, defendant Alkon Vorotinov, having knowledge of the actual commission of a felony cognizable by a court of the United States, namely, the mail fraud scheme described above, concealed and did not as soon as possible make the crime known to some judge and person in civil authority under the United States, in violation of Title 18, United States Code, Section 4 (Misprision of a Felony).

I further state that I am a Special Agent and that this complaint is based on the following facts:
SEE ATTACHED AFFIDAVIT
Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Complainant's signature

Jennifer Khan, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/12/2015

City and state: St. Paul, MN

_____
Judge's signature

Hildy Bowbeer, United States Magistrate Judge

SCANNED
JAN 13 2015
U.S. DISTRICT COURT ST. PAUL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-MJ-021 (HB)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

IRINA VOROTINOV, and
ALKON VOROTINOV,

        Defendants.

**AFFIDAVIT OF SPECIAL AGENT JENNIFER KHAN**

Your affiant, Jennifer L Khan, being first duly sworn, does state under oath that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent of the Federal Bureau of Investigation in Minneapolis, Minnesota. I have been employed in the capacity of Special Agent since November 2005. As a Special Agent, my duties and responsibilities include conducting criminal investigations of individuals and businesses for possible violations of Federal laws, particularly those found in Title 18 of the United States Code. I routinely investigate fraud offenses.

2. In the paragraphs that follow, your affiant sets forth probable cause to believe that Irina Vorotinov ("Irina") defrauded Mutual of Omaha Insurance Company out of more than $2 million, in violation of Title 18, United States Code, Section 1341 (Mail Fraud). Your affiant also sets forth probable cause to believe that Irina's son, Alkon Vorotinov ("Alkon"), became aware of his mother's mail fraud offense no later than April 2013, and concealed and did not make the crime known to any judge or civil

official of the United States, in violation of Title 18, United States Code, Section 4 (Misprision of a Felony).

## BACKGROUND

3. On June 18, 2012, your affiant received a tip from an unknown source located in Moldova that Irina's former husband, and Alkon's father, Igor Vorotinov ("Igor"), staged his death overseas to fraudulently collect money from a United States life insurance company. The tipster accurately reported that Igor's wife was named Irina Vorotinov; that one of Igor's sons was named Alkon Vorotinov; and that both Irina and Alkon reside in Minneapolis, Minnesota. The tipster indicated that Igor was living in the Ukraine under a new identity. I proceeded to investigate the tip. The information set forth in the following paragraphs is based on documents I obtained during the course of my investigation through the use of legal process and the execution of search warrants. The information is also based upon interviews I have conducted and upon personal observations made by me and other law enforcement personnel.

4. I obtained a life insurance file from Mutual of Omaha from which I learned that, on April 22, 2010, Igor obtained a life insurance policy on his own life from Mutual of Omaha listing Irina and Alkon as the beneficiaries. On November 7, 2011, Irina submitted a claim to Mutual of Omaha in which she claimed that Igor had died in Moldova on October 1, 2011. Mutual of Omaha hired Worldwide Resources, Inc. ("Worldwide") to investigate the claim, which sent investigators to Moldova to collect documents and conduct interviews. I have carefully reviewed the Worldwide investigative reports included in the Mutual of Omaha file.

2

5. According to the Worldwide investigation, on October 1, 2011, the Moldavian police received a 902 phone call (equivalent to USA 911) from an unidentified person stating there was a dead body at the entrance of the Cojusna village in Moldova. The police officer who responded was interviewed. He reported that he found the body off to the side of the road between two bushes; determined that there was no violence done to it; and called his son to help him transport it to the morgue in Straseni. Documents on the body identified the body as that of Igor Vorotinov (passport, hotel cards and contact phone numbers). The police officer claimed that he did not have access to a camera; therefore, no pictures of the body were taken.

6. Igor's cousin, Eduard Pavel Golinschi ("Golinschi"), a resident of Chisinau, was also interviewed. Golinschi reported that he informed Irina of Igor's purported death. Irina subsequently traveled to Moldova to identify the body. Irina, Golinschi and a representative of the United States Embassy went to the morgue to view/identify the body. Irina requested the morgue to cremate the badly putrefied body. The morgue reportedly did not have access to a camera; therefore, no pictures of the body were taken. Moldova issued the death certificate on October 11, 2011. The body was cremated on October 20, 2011 in Odessa, Ukraine, and Irina picked up the ashes and then returned to Minnesota on October 29, 2011. On November 7, 2011, Irina submitted the death claim to Mutual of Omaha. On March 23, 2012, Mutual of Omaha paid Irina $2,048,414.09 in life insurance proceeds (including interest) in the form of a check payable to Irina. On March 23, 2012, Mutual of Omaha mailed the check to Irina's residence located in Maple Grove, Minnesota utilizing the United States mail.

7.   On March 29, 2012, Irina and Alkon went to a local branch of US Bank to open a bank account into which the Mutual of Omaha check could be deposited. According to US Bank officials, Irina, Alkon and an attorney accompanying them told US Bank that the check was the proceeds of a life insurance policy resulting from the death overseas of Igor. Thus, on March 29, 2012, Alkon knew that a claim had been submitted to a life insurance company predicated upon the purported death of his father.

8.   Between March 29, 2012 and the date of this affidavit, Irina and Alkon, working together, transferred over $1.5 million of the proceeds to accounts located in Switzerland and Moldova.

9.   On November 27, 2013 Alkon, traveling with his fiancé, Olga Haritonov ("Olga"), were stopped by Customs and Border Protection ("CBP") in Detroit, Michigan. They were coming from Moldova and traveling to Minneapolis, Minnesota. Both Alkon and Olga had laptop computers in their possession that CBP agents detained. On December 16, 2013, search warrants were obtained to image and search both computers.

10.   One of the computers, a Sony VAIO laptop, contained digital photographs of Igor taken in April, 2013, and May, 2013, respectively, in which Igor is very much alive. I have personal knowledge that the person depicted in the photographs is Igor because I met Igor in connection with a prior investigation of Irina and the person depicted in both photographs is Igor. Further, I compared the man depicted in the photographs to the Minnesota DMV picture of Igor, and the person depicted in the Minnesota DMV photograph is the same man depicted in the two photographs on the computer. Finally, I showed the photographs on the computer to a cooperating individual

who has known Igor for many years. The cooperating individual identified Igor as the person depicted in both photographs.

11. Metadata associated with the digital photographs indicate that they were taken by a Canon IOS Rebel T4i DSLR camera on April 19, 2013 and May 12, 2013, respectively, approximately 1.5 years after Igor's purported October 1, 2011 date of death. Indeed, according to Canon's website, the Canon IOS Rebel T4i was released in June 2012, more than 9 months after Igor's purported death. The photographs were located in a folder labelled "grandfather" in Russian.

## CONCLUSION

12. Based on facts set forth in this affidavit, there is probable cause to believe that Irina Vorotinov defrauded Mutual of Omaha Insurance Company of more than $2 million, in violation of Title 18, United States Code, Section 1341, and that Alkon Vorotinov was aware of the fraudulent life insurance claim, and at least as early as April 2013, the fact that Igor did not die, and yet concealed and failed to report the crime to any judge or civil official of the United States, in violation of Title 18, United States Code, Section 4.

FBI Special Agent Jennifer Khan

Subscribed and sworn to before me
on this 12 day of January, 2015.

The Honorable Hildy Bowbeer
United States Magistrate Judge

5